**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY**

| | | |
|---|---|---|
| STEPHANIE SPEARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv- |
| | ) | |
| THERMO FISHER SCIENTIFIC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Stephanie Spears Parham (hereinafter "Plaintiff"), by and through her undersigned counsel and for her Complaint for Damages and a Jury Trial against Defendant Thermo Fisher Scientific (hereinafter "Defendant") states and alleges as follows:

**PARTIES**

1. Plaintiff is a citizen of the United States and, at all times pertinent to this Complaint, was an "employee" of Defendant within the meaning of the Kansas Act Against Discrimination, KSA § 44-1002(b) ("KAAD") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the Equal Pay Act of 1963, § 206.

2. Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Waltham, Massachusetts. Defendant is a global company operating under the laws of the State of Kansas with multiple locations in the Johnson County area, including the location at 12076 Santa Fe Trail Dr, Lenexa, Kansas 66215 where Plaintiff was an employee.

3. Defendant is a global healthcare company with approximately 50,000 employees worldwide that provides instrumentation, diagnostics, and testing supplies to healthcare and pharmaceutical companies.

4. At all relevant times, Defendant was an "employer" within the meaning of Title VII, Section 1981, the ADEA, and the EPA in that it engaged in industry affecting commerce and employed more than the requisite number of persons for the requisite duration under the referenced statutes.

5. All the acts, conduct, and omissions of Defendant were performed by its agents, representatives, and employees while in the course and scope of their agency or employment.

6. Plaintiff was discriminated against because of her race, gender, and age in violation of Title VII, Section 1981, the ADEA, and the Equal Pay Act.

## JURISDICTION AND VENUE

7. All of the unlawful acts and practices set forth below were committed in Johnson County, Kansas.

8. At all relevant times, Defendant was located in Johnson County, Kansas.

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and has personal jurisdiction over the Defendant in this case. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e–5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

10. On or about November 5, 2021, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Kansas Human Rights Commission ("KHRC"), against Defendant, alleging

discrimination and retaliation due to race, sex, and age. The Charge of Discrimination is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

11. Plaintiff's Charge of Discrimination was amended on November , 2021, and June 3, 2022, with the Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Kansas Human Rights Commission ("KHRC"), against Defendant, alleging discrimination due to race, sex, age, and retaliation. The Amended Charges of Discrimination are attached hereto as Exhibit B and incorporated by reference as if fully set forth herein.

12. On or about August 8, 2022, the United States Department of Justice ("DOJ") issued to Plaintiff a Notice of Right to Sue and this lawsuit was filed within 90 days of the receipt of the EEOC's Notice of Right to Sue. The Notice of Right to Sue for Plaintiff is attached hereto as Exhibit C and incorporated by reference as if fully set forth herein.

13. The aforesaid Charges of Discrimination provided the KHRC and EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of a KHRC or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

14. Plaintiff was terminated by Defendant on or about October 6, 2022.

15. Plaintiff's Fourth Amended Charge of Discrimination was filed on November 7, 2022.

16. Plaintiff has exhausted all of her administrative remedies regarding the claims contained herein, and has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## **BACKGROUND**

17. Plaintiff is a 56-year-old African American woman with over thirty (30) years' experience in the field of microbiology and pharmaceuticals.

18. Before working for Defendant, Plaintiff worked for eleven (11) years as a microbiologist and Supervisor of Quality Control at Bayer Animal Health.

19. Plaintiff began working for Defendant in 2005 as an Operations Supervisor, supervising hourly employees.

20. When Plaintiff was hired, Defendant used a "Grade" classification system to classify employees and determine pay. Plaintiff was hired as a "Grade 3" Operations Supervisor.

21. Plaintiff was an Operations Supervisor until 2012, during which time she managed and oversaw eleven assembly lines and over 40 employees.

22. In 2012, Plaintiff accepted an offer to move to the Marketing department and took a position as a Regional Product Manager, also a "Grade 3" position.

23. Plaintiff took the Regional Product Manager job to help broaden her areas of experience, make her more well-rounded, believing it would benefit her in her future endeavors with the Company.

24. In 2013, Defendant reorganized their pay structure, moving from "Grades" to "Bands."

25. Grade 3 employees were categorized as either Band 6 or Band 7 employees, with employees having supervisory responsibilities or experience labeled a Band 7.

26. Plaintiff was categorized as Band 6 despite having supervisory experience while working in Operations.

27. In her position as a Global Brand Manager in Marketing, Plaintiff was responsible for training customers, sales and marketing teams, and others in the pharmaceutical industry on microbiological procedures.

28. While applying for promotions, Plaintiff's manager asked Plaintiff, "Why do you keep applying for promotions now that you are a grandmother? You should just go and enjoy your family."

29. Plaintiff remained a Regional Product Manager until 2018 when Defendant reorganized the Marketing division, eliminating Plaintiff's position.

30. At Defendant's request, Plaintiff applied and was granted an interview for a Band 8 Global Senior Marketing Manager position. Despite being encouraged by Defendant to apply for this position, Plaintiff was passed over in favor of a younger, non-Black employee.

31. Plaintiff was offered a lateral position as a Global Brand Manager and remained at the Band 6 pay level.

32. In 2019, Plaintiff applied for a position as a Senior Manager of Marketing Programs and was passed over in favor of less-qualified, younger, women and men who are not Black.

33. In 2020, Plaintiff applied for positions as a Senior Marketing Manager, Operations Value Stream Manager, and a Manager of Inside Sales, and was passed over in favor of less-qualified, younger, women and men who are not Black.

34. After the repeated rejections, Plaintiff reached out to leaders in Global Talent Acquisition, requesting advice on how to improve her interviews and career development.

35. Plaintiff completed several management trainings, marketing classes, and other professional development courses suggested by supervisors and Defendant's recruiters to better develop her skills and aid with career progression.

36. Plaintiff became a leader in Defendant's African Heritage Employee Resource Group ("AHERG").

37. Plaintiff was a local chair of AHERG and participated in global AHERG events while also developing and leading an AHERG workplace campaign.

38. Plaintiff's job responsibilities have been expanded and enlarged at least four times without a promotion or change in Band.

39. Like most of Defendant's employees, Plaintiff began working remotely full-time in March 2020 due to the COVID-19 Pandemic.

40. In October of 2020, plaintiff contacted Defendant's Human Resources department to inquire about continuing to work remotely and after many months of putting Plaintiff's request on hold, Defendant asked her to fill out a "Flexible Work Arrangement" ("FWA").

41. In early 2021, Plaintiff applied for four positions: Value Stream Manager, Senior Global Pharma & Biopharma Marketing Manager, Vertical Marketing Manager, and Marketing Development Manager, all of which Plaintiff was qualified for.

42. Plaintiff was passed over for each of these positions in favor of less-qualified, younger, women and men who are not Black.

43. In August of 2021, Plaintiff applied for a Band 8 position in Operations (a position one step higher than her previous position as an Operations Supervisor). She was not interviewed or considered for the position and was told by her site leader, John Reuss, that he did not consider her a "leader."

44. Plaintiff applied for this position in Operations four times in 12 years.

45. Defendant hired an external candidate without interviewing Plaintiff.

46. Also in August of 2021, Plaintiff applied for a Band 8 Senior Marketing Position. The interviewers were all male, and unexpectedly included her then supervisor, Jaako McVey.

47. McVey is a white male and significantly younger than Plaintiff. He joined the Company as a Band 8 employee in January of 2020.

48. After the interview that inappropriately involved her own supervisor, Plaintiff contacted Human Resources officer, Carla Owens, and a Vice President of Corporate Global Talent Acquisition, Ronita Griffin, and complained about Defendant's hiring practices, including complaints of and opposition to race, sex, and age discrimination by Defendant.

49. While Plaintiff had always received an "At Standard" rating on her performance reviews, Plaintiff was told by McVey in September of 2021 that Plaintiff had "challenges in developing collaborative relationships with commercial peers," without further explanation or detail.

50. In October of 2021, after working remotely for 18 months, Plaintiff submitted a second FWA that was received by Human Resources and her Supervisor. Plaintiff requested to be permanently moved to remote status because her schedule involves regular conference calls as early as 4:00 a.m. CST and as late as 7:00 p.m. CST due to her "global schedule."

51. Further, Plaintiff detailed how 40% of her job involves travel around the country and internationally.

52. Plaintiff's management team and supervisor worked remotely.

53. After initially being told that her remote status would be approved, Plaintiff was told that her request was denied because 60% of the products she markets for are manufactured in Lenexa, KS, despite the other 40% being manufactured in Europe.

54. Other employees in positions comparable to Plaintiff's are allowed to work remotely.

55. On March 8, 2022, Plaintiff and Defendant engaged in EEOC mediation without reaching a settlement.

56. Following mediation, Plaintiff was placed on a Performance Improvement Plan ("PIP") for the first time in May of 2022.

57. Per Defendant's policy, a person on a PIP is ineligible to apply for open positions with the Company and is ineligible for promotion. The PIP prevented Plaintiff from applying for any positions within the company, thus preventing her from being promoted.

58. Plaintiff's placement on the PIP was in direct retaliation for Plaintiff's opposition to Defendant's discriminatory practices.

59. The PIP detailed stated Plaintiff's "aggressive and confrontational communication style has presented challenges in developing collaborative relationships with commercial peers across multiple regions."

60. No examples of this alleged behavior were provided and the previously provided examples only involved Plaintiff's supervisor when Plaintiff was being told that her FWA was being denied.

61. Upon information and belief, the "aggressive and confrontational communication style" Defendant references is a thinly veiled reference to Plaintiff's status as an African-American woman. African-American women have historically been stereotyped as "aggressive" and "confrontational."

62. After meeting the performance goals of the PIP, plaintiff was told only that she fell short on the "collaboration" goals.

63. Plaintiff was terminated on October 5, 2022.

64. As the result of Defendant's unlawful discrimination Plaintiff has suffered damages in the form of lost wages, lost opportunity, lost fringe benefits, lost stock options, emotional distress, humiliation, and anxiety.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII
## OF THE CIVIL RIGHTS ACT OF 1964

65. Plaintiff hereby incorporates by reference as if fully stated herein the allegations in the foregoing paragraphs.

66. Plaintiff is an African American woman and a member of a protected class.

67. Despite being extremely qualified for her position, and available supervisory roles (promotions), Plaintiff was passed over for multiple promotions in favor of less qualified, non-Black employees.

68. Defendant's conduct in denying Plaintiff promotion was unlawful and intentional and was motivated by Plaintiff's race.

69. The adverse employment actions against Plaintiff occurred under circumstances raising a reasonable inference that her race was a motivating and/or determining factor in Defendant's decision not to promote Plaintiff.

70. The actions of Defendant and its agents constitute discrimination against Plaintiff based on her race in violation of Title VII.

71. Further, the overall culture and attitude of bias by Thermo Fisher towards people of color was sufficiently severe or pervasive enough so as to affect a term, condition, or privilege of Plaintiff's employment resulting in a tangible employment action.

72. Defendant knew or should have known of the unlawful behavior and yet did not exercise reasonable care to prevent and promptly correct any hostile, offensive, and intimidating work environment.

73. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

74. Plaintiff suffered economic damages in the form of lost wages (back and future), lost stock options, humiliation, anxiety and emotional distress.

75. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and+ to deter it and other companies from like conduct in the future.

76. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling her to an award of punitive damages.

77. Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the Defendant on Count I of her Complaint for a finding that she has been subjected to unlawful discrimination prohibited by 42 U.S.C.§2000(e) et seq.; for an award of back pay, including lost fringe benefits, bonuses, and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert witness fees provided by 42 U.S.C. § 2000(e)-5(k); and for such other and further relief the Court deems just and proper.

**COUNT II**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

## OF THE CIVIL RIGHTS ACT OF 1964 – RETALIATION

78.     Plaintiff hereby incorporates by reference as if fully stated herein the allegations in the foregoing paragraphs.

79.     Plaintiff is an African American woman and a member of a protected class.

80.     Defendant failed to promote Plaintiff because of her race, despite her qualifications for certain open positions.

81.     Defendant unlawfully and intentionally discriminated against Plaintiff based on her race and acted in bad faith by interfering with and denying her privileges enjoyed by non-Black employees of Defendant.

82.     Defendant unlawfully and intentionally discriminated against Plaintiff based on her race, and acted in bad faith by retaliating against her after she made complaints about Defendant's hiring practices, including complaints of and opposition to race, sex, and age discrimination by Defendant.

83.     As the result of Defendant's conduct, Plaintiff suffered economic damages in the form of lost wages (back and future), lost stock options, humiliation, anxiety and emotional distress.

84.     As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and to deter it and other companies from like conduct in the future.

85.     The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling her to an award of punitive damages.

86. Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the Defendant on Count II of her Complaint for a finding that she has been subjected to unlawful retaliation prohibited by 42 U.S.C.§2000(e) et seq.; for an award of back pay, including lost fringe benefits, bonuses, and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert witness fees provided by 42 U.S.C. § 2000(e)-5(k); and for such other and further relief the Court deems just and proper.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981
## OF THE CIVIL RIGHTS ACT OF 1991

87. Plaintiff hereby incorporates by reference as if fully stated herein the allegations in the foregoing paragraphs.

88. Plaintiff is an African American woman.

89. Plaintiff is a member of a protected class.

90. Defendant's conduct in refusing to promote Plaintiff because of her race constituted discrimination interfering with the making, performance, modification, and/or the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship, conduct prohibited by Section 1981.

91. Plaintiff was passed over for promotion on numerous occasions despite being qualified for the positions to which she applied.

92. The actions of Defendant and its agents constitute discrimination against Plaintiff based on her race in violation of Section 1981.

93. Defendant knew or should have known of the unlawful behavior and yet did not exercise reasonable care to prevent and promptly correct any hostile, offensive, and intimidating work environment.

94. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Section 1981.

95. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

96. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling her to an award of punitive damages.

97. Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the Defendant on Count III of her Complaint for a finding that she has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 1981(a) et seq.; for an award of back pay, including lost fringe benefits, bonuses, and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert witness fees; and for such other and further relief the Court deems just and proper.

**COUNT IV**
**RACE DISCRIMINATION IN VIOLATION OF SECTION 1981**
**OF THE CIVIL RIGHTS ACT OF 1991- RETALIATION**

98. Plaintiff hereby incorporates by reference as if fully stated herein the allegations in the foregoing paragraphs.

99. Plaintiff is an African American woman.

100. Plaintiff is a member of a protected class.

101. After Plaintiff was passed over for promotion on numerous occasions despite being qualified for the positions to which she applied, complained of race discrimination to her employer and filed a Charge of Discrimination alleging the same.

102. Following her complaints and the filing of her Charge of Discrimination, Defendant placed Plaintiff on an unwarranted PIP, which constituted an adverse employment action taken in retaliation for Plaintiff's engagement in protected activity.

103. The actions of Defendant and its agents constitute Retaliation in violation of Section 1981.

104. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Section 1981.

105. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

106. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling her to an award of punitive damages.

107. Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the Defendant on Count IV of her Complaint for a finding that she has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 1981(a) et seq.; for an award of back pay, including lost fringe benefits, bonuses, and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert witness fees; and for such other and further relief the Court deems just and proper.

## COUNT V
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII
## OF THE CIVIL RIGHTS ACT OF 1964

108. Plaintiff incorporates each preceding paragraph as though fully set forth herein.

109. Plaintiff is female.

110. Defendant treated Plaintiff less favorably than similarly situated male employees in the terms and conditions of her employment.

111. When Plaintiff filed her First Charge of Discrimination in November of 2021, there were nineteen (19) Band 6 Marketing Managers in four (4) locations.

112. Upon information and belief, and Plaintiff was paid at a rate lower than her male counterparts performing essentially the same duties, despite the fact that Plaintiff balanced more responsibilities than male employees in Band 6 Marketing Manager positions with Defendant.

113. Defendant unlawfully and intentionally discriminated against Plaintiff based on her sex, and acted in bad faith by paying her at a rate lower than her male counterparts.

114. Additionally, Defendant passed over Plaintiff for promotion to jobs for which she was qualified in favor of less qualified, male employees.

115. The actions of Defendant and its agents constitute discrimination against Plaintiff based on her sex in violation of Title VII.

116. The overall culture and attitude of bias of Thermo Fisher towards women was sufficiently severe or pervasive enough so as to affect a term, condition, or privilege of Plaintiff's employment resulting in a tangible employment action.

117. Defendant knew or should have known of the unlawful behavior and yet did not exercise reasonable care to prevent and promptly correct any hostile, offensive, and intimidating work environment.

118. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

119. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and/or to deter it and other companies from like conduct in the future.

120. The conduct of Defendant was outrageous due to its evil motive and/or reckless disregard for Plaintiff's civil rights, entitling her to an award of punitive damages.

121. Plaintiff is also entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the Defendant on Count V of her Complaint for a finding that she has been subjected to unlawful discrimination prohibited by 42 U.S.C.§2000(e) et seq.; for an award of back pay, including lost fringe benefits, bonuses, and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert witness fees provided by 42 U.S.C. § 2000(e)-5(k); and for such other and further relief the Court deems just and proper.

**COUNT VI**
**AGE DISCRIMINATION IN VIOLATION OF THE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")**

122. Plaintiff hereby incorporates by reference as if fully stated herein the allegations contained in the foregoing paragraphs.

123. Plaintiff is 56-year-old, African-American woman.

124. Plaintiff was qualified for the positions to which she applied but was consistently passed over in favor of younger employees with less experience.

125. In addition, Defendant marginalized Plaintiff while treating younger, similarly situated employees more favorably.

126. Further, Plaintiff was subjected to discriminatory comments by supervisors that included comments about her becoming a grandmother and wondering why Plaintiff would want to continue her career progression at her age.

127. Plaintiff suffered damages because of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

128. As shown by the foregoing, Defendant engaged in these discriminatory practices with malice or reckless indifference to the federally protected rights of Plaintiff. Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendant and/or to deter it and other companies from like conduct in the future.

129. Defendant willfully violated Plaintiff's rights under the ADEA and, as a result, is liable for liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant on Count VI of her Complaint for a finding that she has been subjected to unlawful discrimination prohibited by 29 U.S.C. §§ 621-634; for an award of back pay, including lost fringe benefits, bonuses, and other

benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert witness fees; and for such other and further relief the Court deems just and proper.

## COUNT V
## VIOLATION OF EQUAL PAY ACT

130. Plaintiff hereby incorporates by reference as if fully stated herein the allegations contained in the foregoing paragraphs.

131. Plaintiff is an African American woman.

132. Plaintiff is a member of a protected class.

133. Defendant is an employer subject to the Equal Pay Act of 1963.

134. Plaintiff, in her position with Defendant, performed work substantially equal to that of male employees, considering the skills, duties, supervision, effort, and responsibilities of the job.

135. The conditions where Plaintiff fulfilled her work duties (in the Lenexa, Kansas office of Defendant and/or remotely) were basically the same as the conditions where similarly situated male employees worked.

136. Similarly situated male employees were paid more than Plaintiff in violation of the Equal Pay Act, 29 U.S.C. § 206.

137. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefits as well as other monetary and non-monetary benefits.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count V of her Complaint, for a finding that Defendant has violated the Equal Pay Act of 1963; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits

including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorneys' and expert witness fees; and for such other and further relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL AND REQUEST FOR PLACE OF TRIAL**

Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all matters set forth in this Complaint or arising therefrom, and, pursuant to D. Kan. Rule 40.2(a), requests such trial be held in Kansas City, Kansas.

Respectfully submitted,

DYSART TAYLOR COTTER
McMONIGLE & BRUMITT, P.C.

By  */s/ Kathryn T. Alsobrook*
Kathryn T. Alsobrook           #26171
Sydney Paquette               #26351
700 West 47th Street, Suite 410
Kansas City, Missouri 64112
Telephone: (816) 931-2700
Facsimile: (816) 931-7377
kalsobrook@dysarttaylor.com
spaquette@dysarttaylor.com