UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHANIE SPEARS,

    Plaintiff,

v.

THERMO FISHER SCIENTIFIC,

    Defendant.

Case No. 22-2454-DDC-GEB

# **ORDER**

On September 11, 2024 the Court held a discovery conference with the parties to consider the privilege issues Defendant raised with regard to a Pay Equity Study conducted by Defendant. Upon review of the parties' submissions to the Court, and after hearing oral argument of the parties, the Court overruled Defendant's attorney-client, work product, and self-critical analysis privilege objections. The Court found Defendant waived attorney-client privilege when it published information including the purpose of the study, data from the study including analysis, and results of the Pay Equity Study in their 2022 Corporate Social Responsibility Report (2022 Report). The Court orally ordered Defendant to produce the Pay Equity Study to Plaintiff no later than September 12, 2024.

Defendant then raised an Oral Motion to Stay Order which the Court GRANTED. Following the September 11, 2024 conference, the Court entered an initial text order (ECF No. 78). This written order memorializes the Court's findings at the conference. The issues mentioned above will be addressed in turn.

1

I.    **Background**

Highly summarized, this is an employment discrimination case. Plaintiff, a 56-year-old African American woman, in her Complaint[1] alleges during her 11 years of employment with the Defendant as a microbiologist and supervisor of quality control, she was continuously discriminated against on the basis of race, sex, and age. On November 5, 2021, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission. On November 2, 2022, Plaintiff filed the Complaint in this case alleging a violation of the Equal Pay Act against Defendant on the basis of race, sex and age discrimination. After the conduct of several discovery conferences, and a few extensions of the scheduling order, discovery is now closed. The matter herein is the final remaining discovery dispute.

During the August 19, 2024 conference, the Court discussed the issue of the Pay Equity Study with the parties. Defendant argued initially Plaintiff's request was untimely because it was requested three weeks prior to the close of discovery, and Plaintiff could have requested the study earlier. The Court pointed out discovery in this matter had been extended, and in light of Plaintiff's claims the Pay Equity Study, is relevant. In hopes that the parties would further confer and reach an agreement, the Court directed the Defendant to either produce the study to Plaintiff by August 26, 2024 or file a privilege log including the document. Defendant opted on the latter. It timely produced a privilege log arguing the

---

[1] Plaintiff's Complaint, ECF No. 1 at 4, 9, 15 & 17.

Pay Equity Study is protected by attorney-client privilege, protected by the work product doctrine, and subject to the protections under the self-critical analysis privilege.

The Court permitted the parties to present position statements of no more than five pages. In its position statement, Defendant's sole argument was the study is protected by attorney-client privilege. Therefore, the Court believes Defendant's prior arguments relating to the work product doctrine and the self-critical analysis privilege were abandoned.

## II. Attorney-Client Privilege

Defendant argues the Pay Equity Study was conducted and given to their in-house counsel for the purposes of producing sound legal advice, making the study privileged citing to *Apsley v. Boeing Co.*, 2008 WL 191418 at *2 (D. Kan. Jan. 22, 2008) (citing *Johnson v. Kraft Foods*, 2007 WL 221927 (D. Kan. July 30, 2007)).

The Court began by considering whether attorney-client privilege was applicable. Plaintiff argues the Pay Equity Study is relevant to her claims of discrimination, and particularly the Equal Pay Act claim. Plaintiff further contends the Pay Equity Study cannot be a communication because facts underlying the communications between attorney and client are not protected by the privilege. Plaintiff contends data from the Pay Equity Study is facts.

Defendant submitted to the Court, in-camera, the Pay Equity Study including the analysis and their retention letters with Mercer, the company that conducted the study. Upon review of this material, the Court found while the initial engagement letter from appeared to act at the direction and supervision of Thermo Fisher attorneys in connection

with that *legal advice*, a second engagement letter issued three months later appeared to provide simple *advice* to Thermo Fisher. The Court notes it is of significance that "legal advice" was omitted in the later letter.

While the Mercer letters themselves are deemed to be protected by the attorney-client privilege and not discoverable, the Pay Equity Study is not. The facts, as presented, weigh in favor of the study and its analysis not being protected by attorney-client privilege. The Court is of the opinion Defendant produced this study for primarily business purposes, rather than legal purposes. Upon review of the 2022 Report, the Court was able to see, on its face, several instances where data and other information contained within the Pay Equity Study was published for business purposes. For example, Defendant stated multiple times in its 2022 Report, published on their website, the analysis was done for progressive and equitable purposes for the company as a whole, and "to ensure our colleagues receive fair, competitive and equitable pay for their contributions to Thermo Fisher." The Court finds where the facts show the Pay Equity Study was for primarily business purposes, it is not protected by attorney-client privilege.[2]

While Defendant contends factually similar cases have found a Pay Equity Study is protected by the attorney-client privilege, the cases cited by Defendant rely on a 9th Circuit and 7th Circuit analysis of attorney-client privilege. In *Melgoza v. Rush Univ. Med. Ctr.*, the Court ordered an in-camera view of the report after determining the Pay Equity Study

---

[2] *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 674–75 (D. Kan. 2005) ("Legal advice must predominate for the communication to be protected. The privilege does not apply where the legal advice is merely incidental to business advice.").

was communicated from the third party to the Defendant's in-house legal counsel.[3] As a result, the Court found the intent for the report was to obtain legal advice and keep the report confidential.[4] In *Cahill v. Nike, Inc.,* the court notably found "the retention was made in order to counsel Nike on its pay practices and pay adjustment matters, and to help Nike legal remediate risk arising out of or relating to pay and/or promotion discrepancies for members of protected classes."[5]

The two out of circuit cases cited by Defendant are legally and factually distinguishable from this scenario where the later retention letter omitted any request for legal advice and the Pay Equity Study is not currently used by in-house counsel to provide legal advice. Further, the Court questions whether there was an intent to keep the Pay Equity Study, including its data analysis, confidential in light of the references to it in the 2022 Report. The Court finds attorney-client privilege does not apply to the data analysis, and the facts of the Pay Equity Study in this case.

Even if the privilege did apply, the Court further addresses whether Defendant waived attorney-client privilege. The Court finds where Defendant's 2022 Report, reads "[o]ur pay equity analysis showed that non-executive colleagues who are women earned 98% of the total pay earned by men in similar roles. Racially and ethnically diverse colleagues earned 99% of the total pay earned by White/Caucasian colleagues in similar roles," the Pay Equity Study failed to remain confidential. The results of the study were

---

[3] *Melgoza v. Rush Univ. Med. Ctr.*, 2019 WL 2504094, at *6 (N.D. Ill. June 14, 2019).
[4] *Id*. at *7.
[5] *Cahill v. Nike, Inc*., No. 18-1477-JR, 2020 WL 5989202, at *3 (D. Or. Oct. 9, 2020).

shared publicly with shareholders and the general public and were not just for legal advice. Defendant cites no authority where a partial privilege is applicable in this case. Thus, Defendant waived the privilege when they published the study.

"Courts will grant no greater protections than the holder of the privilege grants themselves."[6] "Where a party voluntarily discloses the content of their privileged communications, attorney-client privilege is waived."[7] In light of the caselaw from the Tenth Circuit, the Court declines to grant greater protections to the Pay Equity Study than Defendant itself. Defendant's objection to the production of the Pay Equity Study is overruled.

### III. Work Product

While the Court believes Defendant abandoned its arguments as to protections under the work product doctrine, because the privilege log claims such a protection, the Court will briefly address Defendant's objection. During the discovery hearing, the Court determined Defendant failed to meet their burden in demonstrating the Pay Equity Study is work product. The party asserting the privilege has the burden to make a clear showing the privilege applies.[8] Bare bones assertions of the privilege do not satisfy the burden of proof.[9]

---

[6] *United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir.1990); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009).
[7] *Lawson v. Spirit AeroSystems, Inc.*, 410 F. Supp. 3d 1195, 1206 (D. Kan. 2019).
[8] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007).
[9] *Lawson*, 410 F. Supp. 3d at 1207.

Here, Defendant merely states in their privilege log the results of the Pay Equity Study are work product. However, Defendant did not make any supportive arguments in their position statement. Further, Defendant did not make a clear showing of ongoing or anticipated litigation. Plaintiff's claim was filed in November 2021, *after* Defendant commissioned the Pay Equity Study and its data analysis on October 5, 2021. Defendant lists no relevant litigation or legal claims that the analysis was prepared in anticipation of or support for. Notably, the Court is unable to see where Defendant is relying on the Pay Equity Study for any claim or defense in this Equal Pay Act case. As such, the Court finds the Pay Equity Study is not protected by the work product doctrine, and Defendant's objection is overruled.

## IV.     Self-Critical Analysis Privilege

Finally, Defendant added to their privilege log an objection to production of the Pay Equity Study on the basis of the self-critical analysis privilege. While the Court again believes Defendant abandoned its arguments surrounding this privilege in their position statement, the Court will address the objection.

This District has not treated the self-critical analysis privilege favorably.[10] Where the privilege does apply in other courts, it is because the material was prepared for a mandatory governmental report or the material in the report is subjective in nature.[11]

The Court found self-critical analysis privilege does not apply to this case. Defendant failed to argue any policy reasons for applying the privilege in this District. The Pay Equity Study was not mandatory in its creation and the results the Court has seen are statistical, not subjective in nature. The objection to production of the Pay Equity Study on the basis of self-critical analysis privilege is overruled.

**V.      Plaintiffs Failure to File a Motion To Compel Pursuant to D. Kan. Rule 37**

Lastly, Defendant argued Plaintiff failed to challenge their opposition to producing the Pay Equity Study within 30 days of Defendant's objection to the initial interrogatory. It is important to note, through the discovery period of this case, the parties have requested several discovery conferences and extensions of discovery in this matter. The undersigned held two conferences in July and August alone regarding Defendant disclosing their corporate documents, including their own organizational charts. When they were produced, they were produced in a redacted fashion. After the Court clarified its ruling on production,

---

[10] *Hoffman v. United Telecommunications, Inc.,* 117 F.R.D. 440, 442 (D. Kan. 1987) ("Courts which use the "self-critical analysis" privilege, usually follow the following guidelines: (1) [M]aterials protected have generally been those prepared for mandatory governmental reports; (2) only subjective, evaluative materials have been protected; (3) objective data in those same reports have not been protected; and (4) in sensitivity to plaintiffs' need for such materials, courts have denied discovery only where the policy favoring exclusion has clearly out-weighed plaintiffs' need." *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 217 (D.Mass.1980). See also *Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 434 (E.D.Pa.1978)).
[11] *Id.*

twice, Defendant ultimately produced the unredacted charts. Timely discovery objections were not Defendant's strongest leg to stand on with the Court.

Further, the Court finds the 30-day period for raising the dispute was triggered by Defendant's updated privilege log, not the initial interrogatory.[12] Thus, the Court finds Plaintiff was timely in raising this issue.

## VI.   Conclusion

Based on the foregoing, Defendant's objections to the production of the Pay Equity Study, including its data analysis, on the basis of attorney-client privilege, protections under the work product doctrine, and the self-critical analysis privilege are overruled.

IT IS SO ORDERED.

Dated September 20, 2024, at Wichita, Kansas.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
U.S. Magistrate Judge

---

[12] *KPH Healthcare Servs., Inc. v. Mylan N.S.*, No. 20-2065-DDC, 2024 WL 3890162, at *3 (D. Kan. Aug. 20, 2024).