IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEPHANIE SPEARS,<br><br>      Plaintiff,<br><br>v.<br><br>THERMO FISHER SCIENTIFIC,<br><br>      Defendant. | Case No. 22-2454-DDC-GEB |

### **MEMORANDUM AND ORDER**

In this employment discrimination case, plaintiff Stephanie Spears seeks production of a Pay Equity Study conducted by her former employer, defendant Thermo Fisher Scientific. *See* Doc. 87 at 2. But defendant claims attorney-client privilege protects the Study. *See generally* Doc. 85. Magistrate Judge Gwynne E. Birzer disagreed, and on September 11, 2024, ordered defendant to produce the Study. *See* Doc. 82 at 1. Defendant objected. Doc. 85. The court now reviews, and overrules, defendant's objections to Magistrate Judge Birzer's Order.

**I.  Background**

*Plaintiff's Employment Discrimination Claims*

Plaintiff's underlying factual allegations don't affect the court's review of this discovery dispute. So, the court summarizes those facts—taken from plaintiff's Second Amended Complaint (Doc. 10)—for background purposes only. Then, the court provides an overview of the discovery dispute at issue here.

When she filed the action, plaintiff Stephanie Spears was a 56-year-old African American woman with over 30 years of professional experience in microbiology and pharmaceuticals.

Doc. 10 at 4 (2d Am. Compl. ¶ 18).  Defendant Thermo Fisher Scientific employed plaintiff from 2005 until 2022.  *Id.* at 4–9 (2d Am. Compl. ¶¶ 20–64) (outlining plaintiff's career at Thermo Fisher Scientific).  Plaintiff held various roles throughout her tenure, including Operations Supervisor, Regional Product Manager, and Global Brand Manager.  *Id.* at 4, 5 (2d Am. Compl. ¶¶ 20, 23, 32).  Plaintiff applied for promotions multiple times.  *Id.* at 5–7 (2d Am. Compl. ¶¶ 31, 33–34, 42–43).  Despite plaintiff's qualifications, defendant chose younger, non-Black, less-qualified candidates instead.  *Id.*  Plaintiff also alleges that defendant classified her in a lower pay "Band" than she deserved given her supervisory experience.  *Id.* at 5 (2d Am. Compl. ¶¶ 26–27).  And even when defendant expanded plaintiff's job responsibilities several times, she didn't receive a promotion or pay raise.  *Id.* at 6 (2d Am. Compl. ¶ 39).

On November 5, 2021, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Kansas Human Rights Commission (KHRC) against defendant, alleging race, sex, and age discrimination and retaliation.  *Id.* at 2–3 (2d Am. Compl. ¶ 10); Doc. 10-1 (Nov. 5, 2021, Charge of Discrimination).  In May 2022, after an unsuccessful EEOC mediation, defendant placed plaintiff on a Performance Improvement Plan.  Doc. 10 at 8 (2d Am. Compl. ¶¶ 56–57).  On August 10, 2022, the EEOC issued plaintiff a Notice of Right to Sue.  *Id.* at 3 (2d Am. Compl. ¶ 12); Doc. 10-3 (Aug. 10, 2022, Notice of Right to Sue).  Defendant terminated plaintiff's employment in early October 2022.  Doc. 10 at 3, 9 (2d Am. Compl. ¶¶ 13, 64) (identifying both October 5 and October 6, 2022 as termination date).  In response to her employment's termination, plaintiff filed another Charge of Discrimination with the EEOC and KHRC on November 7, 2022.  *Id.* at 3 (2d Am. Compl. ¶ 14); Doc. 10-4 (Nov. 7, 2022, Charge of Discrimination).

Plaintiff filed this lawsuit on November 8, 2022. *See* Doc. 1 (Compl.). The EEOC then issued another Notice of Right to Sue on plaintiff's second, post-termination filing. Doc. 10 at 9 (2d Am. Compl. ¶ 65); Doc. 10-5 (Feb. 7, 2023, Notice of Right to Sue). So, plaintiff filed an Amended Complaint (Doc. 8), and later, a Second Amended Complaint (Doc. 10). Plaintiff brings race, sex, and age discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act of 1991, the Age Discrimination in Employment Act, and the Equal Pay Act. *See generally* Doc. 10 (2d Am. Compl.).

### A.     The Pay Equity Study Discovery Dispute

Fast-forward to today. Discovery is closed. *See* Doc. 82 at 2. But one final discovery dispute remains: Should the court compel defendant to produce a Pay Equity Study defendant commissioned in 2021? Defendant argues that it should not, because attorney-client privilege protects the Study. *See* Doc. 85 at 1. During a discovery conference on September 11, 2024, Magistrate Judge Birzer orally overruled defendant's objections and ordered defendant to produce the Study. *See* Doc. 78. Magistrate Judge Birzer followed her oral rulings with a written Order (Doc. 82). The matter is now before this court on defendant's objections to Magistrate Judge Birzer's Order (Doc. 85). The court summarizes the relevant events leading to this discovery dispute, next.

In June 2021, defendant commissioned Mercer, an "HR consulting firm," to "conduct a pay equity analysis to assist [defendant's] counsel in providing legal advice to [defendant.]" Doc. 72 at 2. The Study purported to "ensure [defendant] was meeting its pay obligations under the law." Doc. 85 at 3. In October 2021, defendant expanded the Study's scope to cover more employees. *Id.* Two engagement letters—dated June and October 2021—memorialize Mercer's agreements with defendant to perform and expand the Pay Equity Study. *Id.*

3

Plaintiff's counsel apparently discovered the Study existed in late July 2024 when she saw it referenced in defendant's annual reports. *See* Doc. 87-4 at 1 (Aug. 2, 2024, email from plaintiff's counsel to defendant's counsel explaining plaintiff counsel's discovery of the Study). Plaintiff's counsel emailed defendant's counsel on July 31, 2024, requesting the Study. *See* Doc. 87-3 at 4 (July 31, 2024, email from plaintiff's counsel to defendant's counsel). The same day, the parties jointly asked the court to extend discovery until August 23, 2024. *Id.* at 2 (July 31, 2024, emails between parties and Magistrate Judge Birzer's chambers). Magistrate Judge Birzer granted their request. *Id.* at 1–2 (July 31, 2024, email from chambers to counsel).

The parties disputed the Pay Equity Study over email. Defendant asserted that it needn't produce the Study so near the close of discovery, unless it was responsive to an earlier request. *See* Doc. 87-4 at 1 (Aug. 2, 2024, email). Plaintiff contended that the Study was responsive to an earlier request for production. *Id.* Plaintiff had requested "all documents that provide a factual basis for any of the affirmative defenses asserted in Defendant's Answer to Plaintiff's Complaint." *Id.* Under this request, plaintiff asserted, defendant's affirmative defense #21 would loop in the Study. *Id.* That affirmative defense reads: "to the extent Plaintiff's wage was less than those of Defendant's employees of the opposite sex for equal work and functions, such reduced wage was the result of a seniority system, a merit system, a system based on geography, a system which measure earnings by quantity or quality of production, or a pay differential based on any factor other than sex." *Id.* (quotation cleaned up).

Unable to resolve the issue, the parties presented it to Magistrate Judge Birzer during a discovery conference on August 19, 2024. *See* Doc. 82 at 2. Defendant initially argued that plaintiff's request was untimely. *Id.* Defendant contended that plaintiff could have requested the Study earlier, but waited until three weeks before the close of discovery. *Id.* Magistrate Judge

Birzer rejected that argument. She noted that the court had extended discovery and the Pay Equity Study was relevant to plaintiff's claims. *Id.* So, Magistrate Judge Birzer ordered defendant to either produce the Study or file a privilege log including the Study. *Id.* Defendant produced a privilege log, claiming that attorney-client privilege, work product doctrine, and self-critical analysis privilege protect the Study. *Id.* at 2–3.

The parties had filed briefs on the Pay Equity Study's asserted privilege. Doc. 72; Doc. 74. On September 11, 2024, Magistrate Judge Birzer held another discovery conference. *See* Doc. 82 at 1. After considering the parties' arguments and reviewing the Study and related engagement letters *in-camera*, Magistrate Judge Birzer orally ordered defendant to produce the Study. *See* Doc. 78; Doc. 82 at 1, 3. Magistrate Judge Birzer then granted defendant's oral motion to stay the Order. Doc. 78. On September 20, 2024, Magistrate Judge Birzer issued a written Order (Doc. 82) memorializing her findings and decisions. Defendant filed its "Objections to Magistrate's Order Compelling Production of Attorney-Client Privileged Pay Equity Study" (Doc. 85) on October 7, 2024. The court reviews defendant's objections, below. But first, it recites the legal standard governing its review of Magistrate Judge Birzer's Order.

## II.      Legal Standard

Federal Rule of Civil Procedure 72(a) permits a party to present specific written objections to a magistrate judge's order. When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a).

The clearly erroneous standard is "significantly deferential." *United States v. Gallegos*, 314 F.3d 456, 462 n.3 (10th Cir. 2002) (internal quotation marks and citation omitted). The

5

district court must affirm a magistrate judge's factual findings unless a full review of the evidence leaves it "'with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil*, 847 F.2d at 1464 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Because magistrate judges have "broad discretion in the resolution of nondispositive discovery disputes," district courts generally overrule the magistrate judge's decision "only if this discretion is clearly abused." *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991) (citation omitted).

The contrary to law standard permits a district judge to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted). A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09-1316, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011). The court thus employs the clearly erroneous or contrary to law standard here to decide defendant's objections to Magistrate Judge Birzer's Order.

### III.     Analysis

Defendant objects to Magistrate Judge Birzer's Order on three grounds.[1] *First*, defendant argues that the Order erred finding that plaintiff properly and timely requested the Pay Equity Study. Doc. 85 at 5–7. *Second*, defendant contends that the Order erred by determining that the Study isn't privileged. *Id.* at 7–11. *Third*, defendant asserts that the Order's alternative

---

[1] Defendant previously asserted protections under the work product doctrine and the self-critical analysis privilege. *See* Doc. 82 at 6, 7–8. But defendant doesn't object to Magistrate Judge Birzer's conclusions that these doctrines don't apply. *See* Doc. 85 at 8 n.5. Indeed, it has confirmed that it is only asserting the attorney-client privilege at this stage. *Id.* So, the court doesn't address the work product doctrine or the self-critical analysis privilege here.

conclusion—that even if privilege protects the Pay Equity Study, defendant waived that privilege—is contrary to law. *Id.* at 11–12. The court addresses, and overrules, each of defendant's objections, below.

### A. Magistrate Judge Birzer didn't err in overruling defendant's objection based on the timeliness and propriety of plaintiff's request.

Defendant first objects to Magistrate Judge Birzer's conclusion that plaintiff timely requested the Study. *Id.* at 5–7. Plaintiff asked defendant to produce the Pay Equity Study over email on July 31, 2024. *See* Doc. 87-3 at 4 (July 31, 2024, email). Defendant argues that the July 31 request arrived too late because—when plaintiff sent the email—the discovery deadline would expire 10 days later, on August 9, 2024. Doc. 88 at 2. And the operative Scheduling Order required that all "discovery must be commenced or served in time to be completed by" that deadline. Doc. 20 at 3. So, defendant contends, Magistrate Judge Birzer's "Order erred in finding the Study was timely requested." Doc. 85 at 7.

Defendant relies on *Escalante v. Lifepoint Hospital*, No. 17-2035-JWL-KGG, 2019 WL 1753959 (D. Kan. Apr. 19, 2019). Doc. 88 at 2. There, our court held that defendant needn't respond to plaintiffs' production request because plaintiffs made it just two days before discovery closed. *Escalante*, 2019 WL 1753959, at *1. But *Escalante* explicitly noted that plaintiffs "did not move to extend this deadline or request permission from the Court to conduct the discovery out of time." *Id.* at *6. Later in the *Escalante* opinion, when sustaining defendant's timeliness objection, the court emphasized that plaintiffs "provided no valid justification for a failure to request an extension of the discovery deadline or a request to conduct discovery out of time." *Id.*

Not true here. The parties *jointly* moved to extend discovery, and the court extended the discovery deadline until August 23, 2024. Doc. 53; Doc. 54. Magistrate Judge Birzer later

7

directed defendant either to produce the study by August 26, 2024, or file a privilege log including the document. Doc. 82 at 2. Defendant thus had sufficient time to complete production, assuaging any timeliness concerns. The court doesn't have a "definite and firm conviction that a mistake has been committed." *Ocelot Oil*, 847 F.2d at 1464 (quotation cleaned up). And so, the court overrules defendant's objection premised on timeliness.

Defendant also contends Magistrate Judge Birzer erred when she found the Study properly was requested. Defendant posits that plaintiff never sought the Study in discovery. Doc. 85 at 6. Defendant contends that the July 31 email request was informal—not a proper discovery request—and that the informal request wasn't responsive to an earlier production request. *Id.* In support, defendant provides an isolated case quotation for the proposition that "'[i]nformal requests for production lie outside the boundaries of discovery rules.'" *Id.* (quoting *Lujan v. Exide Techs.*, No. 10-4023-JTM, 2011 WL 1594952, at *2 (D. Kan. Apr. 27, 2011)). But defendant's reliance on *Lujan* is misplaced. Indeed, plaintiff is correct: the "holding in *Lujan* is the antithesis of Defendant's position." Doc. 87 at 4.

*Lujan* addressed an objection to a magistrate judge's order to produce video recordings. 2011 WL 1594952, at *1. There, plaintiff's counsel had emailed defense counsel, requesting the need to record videos of defendant's employees performing their jobs. *Id.* Defense counsel rejected plaintiff's request. *Id.* The magistrate judge granted plaintiff's subsequent motion to secure the video recordings. *Id.* Defendant objected, contending the magistrate judge's order was clearly erroneous and contrary to law, in part, because plaintiff failed to make a proper request. *Id. Lujan* clarified that "informal discovery requests do have a place in civil litigation and often form the basis through which the parties exchange much information in a civil case." *Id.* at *2. And *Lujan* concluded that—because defendant had rejected plaintiff's informal

8

request—a motion to compel was "an acceptable next step." *Id.* at *3. Although the court viewed plaintiff's "procedure for seeking discovery" as "not the preferred approach[,]" it nonetheless found "nothing in the magistrate's Order . . . clearly erroneous or contrary to law." *Id.* at *3, *6. And the court allowed the video discovery to go forward. *Id.* at *6.

Here, too, plaintiff's approach used an informal request in an email. And defendant refused the request. *See* Doc. 87-4 at 1 (July 31, 2024, email) ("We do not believe that you ever requested this information prior to your earlier email this week and, absent, a prior discovery request from you do not believe we have an obligation to produce it."). So, plaintiff's appeal to Magistrate Judge Birzer to resolve the dispute—while "not the preferred approach"—was "an acceptable next step." *Lujan*, 2011 WL 1594952, at *3. Defendant's isolated quote aside, nothing in *Lujan* suggests Magistrate Judge Birzer should have found plaintiff's informal request tantamount to no request at all. As in *Lujan*, this court finds "nothing in the magistrate's Order" is "clearly erroneous or contrary to law." *Id.* at *6. Instead, Magistrate Judge Birzer's ruling was an appropriate exercise of her "broad discretion in resolving discovery disputes[.]" *Id.* at *1. And the court won't overrule it absent an abuse of that discretion.

**B.   Magistrate Judge Birzer didn't err in determining that the Pay Equity Study isn't protected by attorney-client privilege.**

Next, defendant argues that Magistrate Judge Birzer erred in concluding the attorney-client privilege didn't protect the Pay Equity Study. Doc. 85 at 7–11. The court also overrules this objection for reasons explained below.

"The attorney-client privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983)). It

9

protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

Federal law provides the elements of attorney-client privilege in this case because the action arises under federal law—the Equal Pay Act and Title VII of the Civil Rights Act. *See* Fed. R. Evid. 501; *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) ("Since this action arises under a federal statutory scheme, federal law provides the rule of decision as to application of the attorney-client privilege." (citing *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368–69 (10th Cir. 1997))). Under federal common law, eight elements inform the rudiments of the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection be waived.

*In re Universal Serv. Fund*, 232 F.R.D. at 674. The parties agree that these elements govern the dispute here. *See* Doc. 85 at 8; Doc. 87 at 5.

"'Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice.'" *In re Universal Serv. Fund*, 232 F.R.D. at 674 (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997)). The "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395 (quotation cleaned up).

For the privilege to apply, "a connection between 'the subject of the communication and the rendering of legal advice'" must exist and legal advice must form the *predominant* purpose

10

of the communication. *In re Universal Serv. Fund*, 232 F.R.D. at 675 (quoting *Burton*, 175 F.R.D. at 328). In contrast, where legal advice is "merely incidental to business advice[,]" the privilege doesn't apply. *Id.* And where "the legal and business purposes of the communication are inextricably intertwined, the entire communication is privileged if the legal purpose outweighs the business purpose." *Byrnes v. St. Catherine Hosp.*, No. 21-2086-DDC-ADM, 2023 WL 2734229, at *14 (D. Kan. Mar. 31, 2023) (first citing *Neuder v. Battelle Pac. Nw. Nat'l Lab'y*, 194 F.R.D. 289, 292 (D.D.C. 2000); and then citing *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685–86 (W.D. Mich. 1996)).

Here, Magistrate Judge Birzer concluded that privilege doesn't protect the Pay Equity Study because defendant conducted the Study primarily for business, not legal, purposes. *See* Doc. 82 at 4. Defendant asserts that Magistrate Judge Birzer erred when she decided this question and that the documents reviewed *in-camera* "make clear the primary purpose of the Study was to assist [defendant's] counsel in providing explicit legal advice and analysis with respect to [defendant's] pay compensation and whether [defendant's] pay practices complied with the law." Doc. 85 at 8.

Magistrate Judge Birzer reviewed *in-camera* the Pay Equity Study—including its analysis—and two engagement letters between defendant and Mercer. Doc. 82 at 3. She noted—and the court since has confirmed after its own *in-camera* review—that the first engagement letter indicated defendant retained Mercer for purposes of securing legal advice. *Id.* at 3–4. The second letter, however, lacked any reference to "legal advice." *Id.* at 4. Magistrate Judge Birzer noted that the second letter's omission of "legal advice" was significant. *Id.*

Magistrate Judge Birzer's reasoning didn't stop there. Perhaps more importantly, her Order identifies that defendant's 2022 Corporate Social Responsibility Report (2022 Report)—

11

which defendant published on its website—references the Pay Equity Study's analysis, which indicates, she reasoned, that defendant performed it primarily for business purposes. *Id.* Specifically, the Order notes that the 2022 Report states multiple times that "the analysis was done for progressive and equitable purposes for the company as a whole, and 'to ensure our colleagues receive fair, competitive and equitable pay for their contributions to Thermo Fisher.'" *Id.* (quoting 2022 Report). The 2022 Report also states that defendant "analyzed data in two ways to gain balanced insights for furthering our D&I progress" and that by "voluntarily increasing the transparency of these disclosures, we are reinforcing our commitment to stakeholders and the continuous improvement of our D&I initiatives." Doc. 85-1 at 34 (2022 Report). Notwithstanding the possibility of underlying legal-advice purposes, defendant's 2022 Report statements support Magistrate Judge Birzer's conclusion that defendant commissioned the Study *primarily* for business purposes. Recall that the court inquires merely whether Magistrate Judge Birzer clearly erred in determining that defendant conducted the Study primarily for business purposes. *See Ocelot Oil*, 847 F.2d at 1462. She did not.

Defendant also contends that Magistrate Judge Birzer erred by concluding that two factually similar out-of-circuit cases are distinguishable. *See* Doc. 85 at 11 (first citing *Melgoza v. Rush Univ. Med. Ctr.*, No. 17 c 6819, 2019 WL 2504094 (N.D. Ill. June 14, 2019); and then citing *Cahill v. Nike, Inc.*, No. 18-cv-1477-JR, 2020 WL 5989202 (D. Or. Oct. 9, 2020)). In *Cahill*, Nike commissioned the pay equity analyses at issue in response to EEOC Charges of Discrimination, complaints of current and former employees, and the plaintiffs' lawsuit itself. 2020 WL 5989202, at *1–2 (describing the events prompting Nike to employ outside counsel and Mercer to conduct multiple pay equity analyses). Given those facts, *Cahill*'s magistrate

judge concluded that Nike conducted the analyses primarily for legal purposes, and thus privilege attached. *See id.* at *4.

Here, defendant didn't commission the Pay Equity Study to respond directly to legal complaints or charges against defendant. *See* Doc. 85-4 at 2, 3 (Fitzgerald Decl. ¶¶ 5, 8) (stating the Study's purpose and implying that the Study was a response to "emerging pay transparency laws" and "pay equity litigation other companies were involved in"). What's more, the *Cahill* opinion lacks any indication that Nike conducted or leveraged the pay equity analyses for business purposes, like defendant here leveraged its 2022 Report. *Compare Cahill*, 2020 WL 5989202, *with* Doc. 85-1 at 34 (2022 Report) (stating that defendant "analyzed data in two ways to gain balanced insights for furthering our D&I progress" and that by "increasing the transparency of these disclosures, we are reinforcing our commitment to stakeholders"). Thus, *Cahill* easily is distinguishable.

*Melgoza* also is distinguishable. In *Melgoza*, a United States magistrate judge considered whether attorney-client privilege protected a pay equity report. 2019 WL 2504094, at *6–8. There, deposition testimony by defendant's representative was the only source indicating any business purpose. *Id.* at *6. While the testimony made the purpose of the report "sound a lot like business advice," the magistrate judge noted "numerous indicia of attorney-client privilege[.]" *Id.* at *6. The balance of the scales is just the opposite here. Multiple sources indicate that the Study's primary purposes were business purposes, while few suggest a primarily legal purpose.

For all these reasons, Magistrate Judge Birzer didn't err in determining that attorney-client privilege doesn't protect the Pay Equity Study. Nor did she err by concluding that the out-

of-circuit cases cited by defendant are distinguishable. So, the court overrules defendant's second objection. Next, the court addresses defendant's third objection—about waiver.

### C. Magistrate Judge Birzer didn't err by determining that—even if the Study was privileged—defendant waived that privilege.

Magistrate Judge Birzer's analysis continued. She concluded that even if attorney-client privilege protects the Pay Equity Study, defendant had waived that privilege by publishing some of the Study's analysis and results in its 2022 Report. Doc. 82 at 5. Defendant challenges this conclusion as contrary to law. *See* Doc. 85 at 12.

A party waives the attorney-client privilege when it voluntarily discloses the substance of an otherwise privileged communication to a third party. *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006). However, revealing "'the *general topic* of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication.'" *Willmore v. Savvas Learning Co. LLC*, 344 F.R.D. 546, 560 (D. Kan. 2023) (emphasis in original) (quoting *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 11121850, at *3 (D. Kan. June 25, 2015)). Similarly, because attorney-client privilege doesn't protect underlying facts, disclosing those facts doesn't waive it, either. *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014). The party claiming the privilege bears the burden of showing that it hasn't waived the privilege. *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009).

Contrary to defendant's assertions, the 2022 Report does more than note "only the broad topics the Study examined[.]" Doc. 85 at 12. Instead, it reveals exactly what defendant claims it doesn't: "specific data or analysis from the Study[.]" *Id.*; *see also* Doc. 85-1 at 34 (2022 Report). The 2022 Report publishes some of the Pay Equity Study's specific results and

analysis, including that the adjusted pay equity analysis showed that "women earned 98% of the total pay earned by men in similar roles[,]" and that "[r]acially and ethnically diverse colleagues earned 99% of the total pay earned by White/Caucasian colleagues in similar roles." *See* Doc. 85-1 at 34 (2022 Report). It includes specific results from the unadjusted median pay analysis, too. *See id.*

These statements reveal more than underlying facts or the general topic of the study. In this context, underlying facts might include, for example, the pay data defendant provided Mercer to conduct its analysis. And the 2022 Report itself provides an example of the general topic: that the analysis's "first-time results reflect the rigor of our compensation policies and processes, and the results of the analysis will inform our work going forward." Doc. 85-1 at 34 (2022 Report). *See also, e.g.*, *Sprint Commc'ns*, 2014 WL 545544, at *6 (explaining that disclosing a party's mere legal conclusion that a patent was infringed doesn't constitute waiver). Had defendant's 2022 Report left it at that, then defendant's waiver argument might stand. Instead, the 2022 Report revealed some of the Study's specific analysis and results—the Study's substance. *See In re Qwest Commc'ns*, 450 F.3d at 1185.

"'[C]ourts will grant no greater protection to those who assert the privilege than their own precautions warrant.'" *In re Qwest Commc'ns*, 450 F.3d at 1185 (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)). So, Magistrate Judge Birzer's conclusion that—even if attorney-client privilege protected the Pay Equity Study—defendant had waived the privilege wasn't contrary to law. The court thus overrules defendant's third objection.

## IV.     Conclusion

Defendant has failed to show that Magistrate Judge Birzer's Order (Doc. 82) is clearly erroneous or contrary to law. Magistrate Judge Birzer didn't err in determining plaintiff properly

requested the Study or that privilege doesn't protect it. Nor did Magistrate Judge Birzer conclude contrary to law that defendant waived the privilege. For these reasons, the court overrules all three of defendant's objections to the Order.[2]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Thermo Fisher Scientific's Objections to Magistrate's Order (Doc. 85) are overruled.

**IT IS SO ORDERED.**

**Dated this 28th day of May, 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**

---

[2] In a footnote, defendant requests that—if it must produce the Pay Equity Study—it can do so "for attorneys' eyes only" under Magistrate Judge Birzer's Protective Order (Doc. 21). *See* Doc. 85 at 15 n.9 (quotation cleaned up). It appears this is the first time defendant has raised this request in writing. And Magistrate Judge Birzer didn't address this issue in the Order under review (Doc. 82). So, the court doesn't rule on this issue here, or suggest that defendant raised this issue in a timely fashion.